Our final case to be heard today is United States v. Benlevi. Good morning, Your Honors, and may it please the Court, my name is Margaret Fearon from the Federal Public Defender's Office, and I'm going to argue on behalf of the defendant and appellant, Robert Benlevi. I'd like to reserve two minutes for rebuttal, and I will be sure to watch my clock. Unless Your Honors would prefer otherwise, I'd like to start by addressing the intended loss issue regarding Sentencing Guideline 2B1.1. As the Third Circuit held in United States v. Banks, Guideline 2B1.1's term, loss, is unambiguously limited to actual loss. It cannot include loss that was merely intended but never occurred. The Commentary's intended loss rubric is, therefore, an impermissible expansion of the Guidelines, and thus this Court should vacate Mr. Benlevi's sentence and remand for resentencing. Before you go further, if we hold that plain error applies here, can you prevail? Your Honor, yes I can, but I would urge Your Honors that this is a pure question of law, and as this Court recently did in Eckford and Casillo, I would urge Your Honors to simply review this de novo. There is no benefit that Your Honors or any party would receive from a plain error standard of review, the parties have fully briefed this issue, and so Your Honors are free, as you always are, to review pure legal questions de novo when no prejudice would result, and it wouldn't. But even under the plain error standard, yes we can prevail, Your Honor. Under the clear framework that was laid out in Castillo and Kaiser for how we look at Guidelines Commentary versus the text, we know for several reasons that loss is not susceptible. It's plain text is simply not susceptible to loss that never happened. We know this from the text, dictionary definitions, the mode of analysis employed in Castillo, and the text of surrounding Guidelines provisions. I mean, you have three circuits that say potentially loss includes intended loss. I mean, it seems hard to say it's a plain error applies when you have three circuits ruling to the contrary. Your Honor, I think the only circuit that's actually spoken to this issue is the Sixth Circuit. I don't like to know, but the other two in plain error, I think said includes that. So we apply plain error here. The other two may have been plain error, but they were relying on prior circuit precedent that was, that had, they were not addressing a legal framework like this court now has after Castillo, where this court has made clear that Kaiser is the governing framework for these challenges. The Gadsden case in the First Circuit did not have that. It was looking at its own prior decisions interpreting intended loss, not with the benefit of Kaiser, or the type of deference that this court has made clear must be applied. So under, I don't think that that is persuasive. Smith is the, and the Sixth Circuit is the only decision that has actually ruled as a matter of law that 2B1.1 is susceptible to this reading. But Smith is in error. Smith agrees with the government and me and all the dictionaries that there's simply nothing close in the words of Smith, nothing close to any dictionary definition of loss that includes loss that never happened. Smith was in error, however, and relied then, it went beyond the plain text, which this court said we don't do in Castillo. It went beyond to an untenable reading of guideline 1B1.3, the relevant conduct guideline, which was simply erroneous, and clearly so, and plainly so, and this court should not follow it. And we know that for all the reasons that are talked about in the briefing. 1B1.3 has no independent significance. It simply defines an outer limit of conduct that can potentially be taken into account under specific offense guidelines, but certainly doesn't have to be. That was Cruz-Gamajo and Treadwell both said that. You have to look to the guideline itself, and so that's where we are. So let's look at the guideline itself. The text, it says loss. In the context of a financial crime with pecuniary, a pecuniary loss, what does a loss mean, how much money was lost? Did the loss exceed a certain amount? The loss exceeded a certain amount means how much money was actually lost. And dictionaries confirm this. There's simply nothing in either the government's or my submissions that says to the contrary that Smith recognized. The canons of consumption that this court applies, exclusio uneus, expressio uneus and exclusio notarius is what this court applied in Castillo to the career offender guideline and in Kauai defenses. So did Dupree. Wynn said all of the cases that are looking at the Kaiser analysis, which this court must apply, look at that. The first time we see intended loss is when we turn to the commentary. We don't see it in the guideline itself. What about rule of lenity? Neither party mentions that in the. The rule of lenity comes into play, Your Honor, and it's text is ambiguous, and it's not ambiguous here. It's not ambiguous as soon as we don't even get there because there's, under your theory, there's no, there's clear textual inconsistency between the rule and the application. Your Honor, I think that the rule of lenity is not totally irrelevant here, but we're really under the framework of Kaiser and Castillo. And what happens under those frameworks when a rule is ambiguous is that we then have to ask whether the commentary is within the zone of ambiguity. And all the ambiguity is, so it's not exactly quite the same analysis, but it is similar in that there is a strong presumption that when there's a deviation between the commentary and the text, there's a lot of hurdles that has to be trans, has to be overcome by the government in order to prevail here. So any ambiguity in loss is limited to the types of actual loss. Like there could be emotional loss, pecuniary loss, unrealized loss yet that will be realized. There's no zone of ambiguity where the loss actually never happens. So, but that even, you know, after that, the rule, I would say that Kaiser's even more favorable to us than the rule of lenity because even assuming that the rule is ambiguous, and even assuming we are in the zone of ambiguity, Kaiser imposes additional hurdles. The rule has to be the actual position of the agency. It has to be not a post hoc rationalization. But most importantly, it has to be within the agency's substantive expertise. Is it with the substantive expertise of the Sentencing Commission to decide that loss should include actual loss? Is that something it's positioned to do? Its expertise is. That's what we do in cases of attempt. In cases of attempt, 1B1.3 directs us to the attempt guideline, 2X1.1. And the attempt guideline then directs us what to do. It says ordinarily we subtract three levels, but we also look to the substantive guideline and then take that into account in the context of 2X1.1. So, attempted loss could be considered within that context under that guideline. And 1B1.3 comment note 6 says the same thing. Loss that's intended should be addressed pursuant to the attempt guideline and the substantive offense guideline. But if we had an attempt and we were not successful because it was interdicted by the police, then how would we measure the loss? Well, under 2X1.3 it says measure, well let's go to that guideline here, I'm sorry. 2X1.1 says directs us how to attempt to get the base level from the guideline for the substantive offense plus any adjustments for any intended offense conduct that can be established with reasonable certainty. So, it's, and 2X1.1 actually says you have to, it says in the text of the guideline that you look at intended offense conduct, right? 2B1.1 doesn't say that. It only says loss. Another thing is that 2B1.1 is part of a trilogy of guidelines that use the same exact language. 2B1.1, 2B2.1, which is burglary, and 2B3.1, which is robbery. They all say if the loss exceeded a certain amount, adjust the offense level as follows. Out of those three provisions, 2B1.1 is the only guideline that purports in the commentary to include intended loss. 2B2.1 and 2B3.1 define it only as harm that actually occurred, the value of the property actually taken, damaged, or destroyed. And the same in 2B3.1. So, the government's kind of contention here is that somehow loss already includes intended loss, just necessarily, but that's clearly not true because the only two other guidelines that use this exact same statutory language and framework, 2B2.1 and 2B3.1, only focus on actual loss, same with bodily injury. In fact, same with the definition of harm in 1B1.3. The definition of harm there in comment note 6A, harm includes bodily injury, monetary loss, property damage, and any resulting harm. It doesn't talk about intended loss. The only place we get that is once we turn to the commentary, not the text of 2B1.3. I've got 1B1.3A3 here, let's see, that would be A3, all harm that resulted and all harm that was the object of such acts and omissions. Yes, Your Honor, it does say that, but what is 1B1.3? It is not, it does not supply a substantive or affirmative definition of loss or harm that then has to be applied in the context of specific Chapter 2 guidelines. It is simply, and Cruz-Gramajo and Tregela both say that, we don't look to that to find out what each specific offense guidelines include. If we did, then 2B2.1 and 2B3.1, robbery and burglary, would also have to include intended loss, but they don't. And Cruz-Gramajo and Tregela says, no, look, we all, this is just an outer limit as broadly as possible for what could be taken into account to the extent permitted by the applicable Chapter 2 guideline. And in fact, it says that in 1B1.3A, unless otherwise specified, this is what's included. And also, the background commentary to 1B1.3 says the same, that Section A establishes a rule of construction by specifying in the absence of more specific, more explicit instructions in the context of a specific guideline. Well, here we do have that explicit instruction in the context of 1B1.3, which is the exact same language in, I'm sorry. What do we do with the commentary, that would be Note 8, about partially completed offenses? I'm sorry, in the case of a partially completed offense? Right. I'm just going to, that wasn't a brief answer. In that case, the offense is to be determined in accordance with 2X1.1 attempt, solicitation, or conspiracy. Whether the conviction is for the substantive offense, the included offense, or both. Okay, well, if it's a partially completed offense, then I can see how it would need to be treated in accordance with 2X1.1. Because 2X1.1.1. Do you have a partially completed offense here? No, Your Honor. Mr. Ben-Levy here was convicted of a completed offense. He was convicted of bank fraud and false statements and money laundering. So, we have only completed offenses in this case. So, I don't think that that really comes into play. And, I mean, even assuming, I mean, another difference between Smith and this case is that Smith actually did involve an NCOE defense. It involved a conspiracy. This case does not. And so. Have you considered engaging in corpus linguistics analysis to see what the word loss might mean? Your Honor's going to have to educate me a little bit, I think, in terms of what that is, what corpus linguistics. Use it as a corpus, a database of language, and see, you know, what a particular word means. Well, I think the databases that this court has held in Corellia are relevant, are dictionaries, legal and non-legal. Numerous of those have been cited to this court in this case by both parties. And, in none of them, I mean, I would think that if the ordinary meaning of loss could include loss that never occurred, at least one of the dictionaries would make some reference to it. Or, at least have something that suggested that. And, as Smith said, Sixth Circuit, nothing comes close, Your Honor. Every single definition of loss that's been provided is actual loss. Same as the definition of harm in 1B1.3. Actual, it's only actual things. Bodily injury, monetary loss, property damage, and resulting harm. I wanted to go back to the point, though, Your Honors, about the expertise of the agency here. Well, only one guideline here that's talking about intended loss. Burglary and robbery, same text of the guideline, do not include intended loss. Only under 2B1.1 has the commission chosen to broaden the language in the commentary to include intended loss. And then, what has it done with that? The government cited two guideline amendments in its briefing, 792 and 617,  and interpreted it further, not pursuant to its expertise as the agency, as Kaiser required. It doesn't say, you know, we didn't go and look through PSRs and look at sentencing outcomes and all of the things that the commission has the expertise to do. It resolved circuit splits. It said in amendment number 792 in absece at 104 to 05 to the guidelines, there was a circuit split as to whether intended loss had to be subjective or objective. And the commission said, we're going to resolve that circuit split for the courts. We're going to say we're adopting the approach taken by the 10th circuit that it's going to be subjective, subjective loss. That's not, the agency is, in fact, then acting as a court and resolving questions that really are questions that courts are best equipped to resolve. Under the guidelines, under the guise of this sort of below the line commentary question, it really isn't even, it isn't even part of the guidelines text at all. And then in amendment 6.7, again, there's another resolution of a circuit conflict. Should intended loss have to be likely or should it be something that's impossible or unlikely to occur, and it chose the latter and said it was resolving a circuit conflict. This is so far afield from kind of what Kaiser permits or says is appropriate for agencies to do, even assuming that we could find that loss could somehow include intended loss, which it cannot, even as we went to the later stages of Kaiser. It's an independent requirement that this interpretation be something the agency came to as a result of its expertise, its substantive expertise, and it's not doing that here. This presents the danger that Kaiser was cautioning against. And I think that your honor should not follow that approach.  We'll give you an extra minute. Thank you, your honor. I appreciate that. Good morning, your honors. Amanda Mundell on behalf of the United States. I'll pick up where counsel left off on the intended loss issue. Just to take some of those points in reverse.  As this court and others have acknowledged, this is the whole ballgame. The Sentencing Commission is tasked with determining a range of penalties for a variety of offenses. That's what it does all the time. But to take a step back at the broader view of this case, as opposing counsel has already pointed out in a Rule 28J letter, the outcome of this intended loss issue is probably going to be decided and controlled by this court's decision in United States v. Hackett, which is a lower-numbered appeal that was submitted and argued this past August. So this court probably doesn't have to reach the question. If it does, of course, we stand by our position in our briefs that intended loss is part of loss. The simplest way of resolving it, though, is, of course, to recognize on plain error review that Mr. Van Levy cannot prevail here. In particular, the circuits are three to one against him. And at a minimum, loss is ambiguous. And it's a reasonable interpretation of the term. Yeah, go ahead. What's ambiguous about it? How do you get loss, an intended loss, to be concepts that are congruent? Well, Your Honor, I would direct the court's attention to the relevant conduct guideline that counsel and this court were talking about earlier. That's 1B1.3, which discusses, and that's really the starting point for calculating a defendant's base offense level, is to first look at the relevant conduct, including harms that are the object of an offense. So right there in 1B1.3, the sentencing guidelines clarify that harms are both actual and intended harms. And unless otherwise specified in other substantive guidelines, that's the rule. The 2B1.1 doesn't otherwise specify that loss ought to be just actual loss. But you can get some pretty absurd results if you follow your line of reasoning. I mean, a guy goes into Rob City Bank, and City Bank's got, you know, $100,000 in the cash register tills, but millions and millions of dollars downstairs in the vaults. He comes, he says, I want to go in and clear out this bank. He robs a teller. He walks away with $7,000. The $100 million is still downstairs. He's stuck for $100 million for sentencing purposes. Your Honor, we have to look at the substantive guideline for that in particular. Is that right? Well, Your Honor, let's assume the substantive guideline for that didn't otherwise specify that it had to be actual loss. And I'm not confident that that would be the case, but let's just assume for this hypothetical that that were true. Then, yes, under the guideline language, if he subjectively intended to rob over $100 million, then. Every dime in City Bank at 54th and Fifth Avenue here in New York, he's stuck for the whole thing. If the substantive guideline doesn't otherwise specify that the loss includes. Yeah, we have to admit that doesn't make a great deal of sense, does it? Well, of course, Your Honor, this is the starting point for calculating an offense level. And once again, I would bring the Court back to the substantive guideline and to the relevant conduct guideline. And this Court, of course, always has discretion to vary downward based on the particular circumstances. The Court here declined to do that based on Mr. Ben Levy's criminal history and his clear intent to obtain at least $21 million through this scheme. What I'm still struggling with here is how is loss really ambiguous? Because there are modifiers that may add some detail to a meaningful word. And then there are modifiers that basically change the meaning of the word, you know. So you have a red card, blue card that just adds an extra detail. Here, the word intended really changes the meaning of the word loss because that's not really a loss. I mean, you know, maybe it's almost Thursday football in my mind. But that's the difference between a pass and an intended pass. Intended pass is the interception. And that's the difference between Aaron Rodgers and Zach Wilson. It's huge. Not exactly the same. Aaron Rodgers, judged by me, says Zach Wilson. That too. But that's what I'm struggling with. I mean, is there any instance where we've used the word loss in common day, you know, purpose to include intended loss? Your Honor, I acknowledge that's not the typical way that you and I may speak about a pass or any other form of loss just in common parlance. But, of course, if we were to use the phrase, say, the scheme involved the loss of $21 million, that raises questions whether the scheme involved a plan to obtain $21 million or whether the scheme actually resulted in obtaining $21 million. If Mr. Ben-Levy had been interdicted before he recovered any money, could you have charged him the same way that you charged him here? Well, if that were the case, Your Honor, I think that would probably be an attempt. And if it's an attempt, then what range would you have given? Would it have required a different range? Would you have measured his intended loss? And would it have come out the same? So, Your Honor, I think first we would go to the attempt guideline there under 2X1.1. You'd consider, I believe, and I confess I don't have the guideline in front of me, but I think that also looks at the loss that was intended. At that point. How could it be anything else? Otherwise, the loss is zero. Exactly. And then at that point, then that would be the full extent that he intended to obtain $21 million, he didn't succeed. But, of course, we're not in an attempt case. We have completed instances of fraud, several instances of making false statements. This is a 16-count indictment, which we found him guilty in every one. So, we are now under the substantive offense guideline for 2B1.1. We don't have to worry about that attempt guideline. And here, you know, I take the court's point that looking at this language on its face doesn't seem like it ought to be ambiguous, but this is not Banova review. This is plain error review. And Mr. Benlevy can't establish that it was clear or obvious that loss is so unambiguous to mean actual loss, that the district court ought to have disregarded that entirely, not deferred to the guidelines, and that he had, you know, ultimately should have been on the hook for $3 million. I think that's underscored by his own admissions below. He didn't object to the court's calculation of loss at $21 million. He agreed. That's what he was responsible for. And so, this is not an instance where a defendant merely forfeits it. He conceded that that was the case. Now, I understand that counsel hasn't addressed the first issue, the search and seizure issue. I would welcome the court's questions on that. I would note that, you know, the arguments from Mr. Benlevy appear to have shifted in time from the district court to now on appeal and even on reply. So, you know, for three reasons, that claim ought to fail. I'm sorry, Your Honor, do you have a question? Hackett is not on plain error review, is that right? I think it is, Your Honor. I think, if my recollection differs from yours, I'll defer to you, but I think Hackett is a plain error case. Also? Yes. Well, a plain error review case also. My understanding is that, you know, typically under the prior panel rule, courts will usually, first that panel will address it, and then this court can take it up. Just on that search and seizure issue, though, Your Honor, is that that claim should fail for three reasons. Chief among them is that it's waived. Mr. Benlevy hasn't presented any good cause for bringing up any of the variety of new theories on appeal. And even if he could raise it on plain error review, he hasn't established a causal nexus. And at a minimum, he hasn't shown any prejudice. Any error in introducing the limited testimony was harmless and laid the overwhelming evidence of his intent and his involvement in this scheme. Wouldn't the government appreciate getting the ambiguity between loss and intended loss cleared up? Wouldn't that ease the burden that you busy lawyers have in lots of cases? I think the clarity would be helpful, Your Honor. I think Hackett is poised to clear that up if the court does end up reaching that issue. And I think it probably will. But, of course, it's also very important to recognize on plain error review the high hurdle that the defendant has to reach. Now, if this were a de novo case, perhaps that would be different. Although, of course, there is a de novo decision that goes right against Mr. Benlevy. So, I agree clarity would be useful. This may not be the best case to bring that clarity as a plain error case. Unless the court has any other questions, we would ask that this court affirm. Thank you. I appreciate the extra time, Your Honor. It's just a few points. I just want to go back to Smith, which is the only other decision that actually addresses this legal issue. The government appears to concede the point that 1B1.3 is not controlling and only applies unless otherwise specified by the Substantive Offense Guideline. Smith incorrectly sort of failed to understand that and misapplied 1B1.3 as some sort of substantive required definition of loss. It just is untenable given that other guidelines only look at actual loss. So, I think Smith is just simply sort of irrelevant and shouldn't cause Your Honors to find that this is an unsettled question. Regarding whether 2B1.1 otherwise specifies from intended harm, it does otherwise specify by using the word loss without any modifier. And I want to direct Your Honors to one authority that we didn't discuss, which is Application Note 6 to 1B1.3, Part B. It talks about rescue danger of harm. And there's a sentence in there that says, if, however, the guideline refers only to harm sustained, and it lists the robbery guideline, 2B3.1 as an example of harm that's actually sustained. And then it says, what's actual attempted or intended harm? And then it talks about 2B1.1 as something that contemplates intended harm. The only difference between the robbery guideline, which this note says is limited to actual loss, and 2B1.1, which this note says has intended loss, is the commentary. Because the robbery guideline and 2B1.1 have the same exact actual text, they both use the term loss. And so, but for the commentary injecting the word intended into this in 2B1.1, it is indistinguishable from the robbery guideline and the burglary guideline, which use this exact same language in which the guideline itself recognizes is limited to actual loss, Your Honors. There's no plausible way to construe things differently. Any court that's done otherwise has relied on this misreading of the relevant conduct guideline. And I would urge Your Honors to resolve this question, which has a huge impact on defendant sentences. For Mr. Mendeleevy, this increased his guidelines level by four. Four years added to his sentence based upon this impermissible guidelines commentary. And I would urge Your Honors to address this question and now vote and find in favor of Mr. Mendeleevy. Thank you. Thank you both for the helpful argument. The case has been submitted and returned to the dais. Thank you both.
judges: Parker, BYBEE, LEE